UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ADAMS SQUARE BAPTIST CHURCH and PASTOR KRISTOPHER CASEY,<br><br>  Plaintiffs,<br><br>  v.<br><br>GOVERNOR CHARLES D. BAKER, in his official capacity; EDWARD M. AUGUSTUS, JR., in his official capacity; and STEVEN M. SARGENT, in his official capacity,<br><br>  Defendants, | CIVIL ACTION NO. |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

Pursuant to Local Rule 7.1(b), Plaintiffs Adam Square Baptist Church and Pastor Kristopher Casey hereby file this Memorandum in support of Plaintiffs' Emergency Motion for Temporary Restraining Order, and allege as follows:

Plaintiffs re-allege and incorporate as if fully set out herein all allegations set forth in the Complaint for Declaratory Judgement and Injunctive Relief filed in this matter, particularly the paragraphs detailing the facts of the case and the Plaintiffs' efforts to meet all relevant CDC-recommended safety guidelines.

The current COVID-19 pandemic has raised myriads of unanswerable questions and posed many unresolvable problems for the world, including Massachusetts. Plaintiffs understand that Commonwealth officials have been faced with a series of crises that are

unprecedented in the nation and certainly in their administration. Plaintiffs are also cognizant that the leaders have had to make many difficult decisions and make them quickly to meet the life-threatening challenges facing the state.

Unfortunately, the executive orders that have been issued to try to meet the COVID-19 crisis have infringed and *COVID-19 Order No. 13* (herein "*Order No. 13*") continues to infringe upon First Amendment rights long held sacred in this nation. Since March, these Plaintiffs have been unable to assemble more than 10 people for religious worship. "Safety" measures that were to be "temporary" have been extended and extended and extended and become more and more restrictive on gatherings for religious worship. Plaintiff Casey has had a civil penalty assessed against him, an application for criminal complaint filed against him, and anticipates more criminal complaints being filed against him for purportedly violating *Order No. 13* by gathering more than 10 people for religious services in the building owned by Adams Square Baptist Church while practicing the CDC-recommended social distancing and safety hygiene protocols.

Plaintiffs are therefore now compelled to challenge *Order No. 13* in light of the glaring disparate, unequal, discriminatory, unfavored, hostile, and most restrictive treatment of Plaintiffs' religious and other First Amendment gatherings over other, secular, gatherings; their congregants' need comfort from their Church after they have been forced to remain in their homes for weeks and weeks; the ever-lengthening infringement by the Orders upon their God-commanded duty to corporately assemble for worship in their houses of worship; and their concern over the State's interference in the very form and method of their most important of their ecclesiastical functions—religious worship.

This case sets before this Court the fortunately rare[1] question of whether a church and other religious entities, wanting to honor their sincerely-held religious beliefs by continuing to assemble for religious worship while adhering to all recommended COVID-19 social distancing and safety hygiene guidelines, may be denied their religious and assembly rights, under penalty of criminal sanctions, by a state government that has disparately exempted dozens of other non-protected secular organizations from the same treatment. Plaintiffs seek temporary and permanent injunctive relief to be able to assemble for religious worship in their God-given buildings, especially during the current crisis.

### Requirements for a Temporary Restraining Order

1. Under federal law, a court faced with a request to issue preliminary injunctive relief must consider four factors: 1) the plaintiff's reasonable likelihood of success on the merits; 2) whether there is substantial risk of irreparable harm to the plaintiff in the absence of preliminary relief; 3) whether there is any need for balancing of the equities; and 4) whether the relief would promote or harm the public interest. *Nat'l Ass'n of Gov't Emps., Inc. v. Nat'l Emergency Med. Servs. Ass'n, Inc.,* 969 F. Supp. 2d 59, 70 (D. Mass. 2013). *See also Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 9 (1st Cir. 2012).

### Plaintiff has a strong likelihood of success on the merits.

---

[1] "The principle that government may not enact laws that suppress religious belief or practice is so well understood that few violations are recorded in our opinions." *Church of Lukumi Babalu Aye v. City of Hialeah,* 508 U.S. 520, 523 (1993)

2.  It is important to note that injunctive relief can be granted without the court needing to "predict the eventual outcome on the merits with absolute assurance." *Ross-Simons of Warwick, Inc., v. Baccarat, Inc.,* 102 F.3d 12, 10 (1st Cir. 1996)

3.  The court's conclusions as to the merits of the issues presented on preliminary injunction are "to be understood as statements of probable outcomes." *Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 5 (1st Cir. 1991).

4.  Plaintiff can clearly show there is at least a probable outcome that the Defendants' actions constitute a violation of Plaintiffs' constitutional rights.

5.  *Order No. 13*, whether considered facially or as applied, violates the First Amendment rights of Plaintiffs set forth in the Free Exercise, Assembly, and Establishment Clauses.

6.  The First Amendment sets forth that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise [of religion] . . . or the right of the people peaceably to assemble…" U.S. Const. amend I.

7.  The First Amendment of the United States Constitution applies to Massachusetts by virtue of the Fourteenth Amendment. *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 301 (2000).

8.  *Order No. 13* specifically and expressly restricts "churches, temples, mosques, and other places of worship" from any sort of in-person religious assembly that includes more than ten congregants.

9.  It is clear that any law that burdens a religious practice must be neutral and of general applicability, and that "[a] law failing to satisfy these requirements must be

justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Lukumi* at 528.

### *Order No. 13* is not neutral or of general applicability.

10. The United States Supreme Court has ruled that "[a] law lacks facial neutrality if it refers to a religious practice without a secular meaning discernible from the language or context." *Id.* at 527.

11. *Order No. 13* is not facially neutral because, while the Order indeed subjects other gatherings to similar treatment (limiting gatherings to 10 or fewer), *Order No. 13* goes on to exempt dozens upon dozens of secular activities and gatherings.

12. Some of these exemptions allow hundreds of people to gather together in a single building.

13. While *Order No. 13* attempts some limited semblance of explanation by labeling these broad exemptions as "essential," it offers no support or reasoning behind allowing mass gatherings in professional offices, home improvement stores, liquor stores, and medical facilities but prohibiting those same people from leaving secular activities to go to in-person religious gatherings at their places of worship.

14. Plaintiffs respectfully submit that gatherings expressly protected by the Constitution of our country and this Commonwealth should be at the top of the government's list of "essential" gatherings.

15. The Supreme Court of the United States specifically addresses government action that burdens the exercise of religion by the process of "exempting" numerous similar secular activities: when "individualized exemptions from a general requirement are

available, the government 'may not refuse to extend that system to cases of 'religious hardship' without compelling reason.'" *Id.* at 537 (quoting *Bowen* v. *Roy*, 476 U.S. [693] at 708 [(1986)] (opinion of Burger, C. J.).

16. Within the last week, the Sixth Circuit Court of Appeals had occasion to enjoin the Kentucky governor from enforcing another, similar, COVID-19 Executive Order that included 4 pages of exceptions that were treated more favorably than churches.

> As a rule of thumb, the more exceptions to a prohibition, the less likely it will count as a generally applicable, non-discriminatory law. *Ward* [*v. Polite*], 667 F.3d [727] at 738 [(6th Cir. 2012)]. "At some point, an exception-ridden policy takes on the appearance and reality of a system of individualized exemptions, the antithesis of a neutral and generally applicable policy and just the kind of state action that must run the gauntlet of strict scrutiny." *Id.* at 740.

*Roberts v. Neace*, No. 20-5465, 2020 U.S. App. LEXIS 14933, at *8 (6th Cir. May 9, 2020).

17. The Supreme Court is very firm on the illegality of deeming secular practices "essential" over religious practices: **"[The government's] application of the ordinance's test of necessity devalues religious reasons…by judging them to be of lesser import than nonreligious reasons. Thus, religious practice is being singled out for discriminatory treatment.**" *Id.*, emphasis added.

18. *Order No. 13* does not argue or even attempt to explain how a gathering at a church would pose any different health risks than those that would arise in airports, airplanes, legal offices, warehouses, and any of the other exempted "essential" activities.

19. Any health and safety concerns present at a safely-conducted religious service would logically be present at all other exempted "essential" activities. That same lack of logic on how exempt businesses would pose less of a health risk than would church

gatherings was extremely troubling to the Sixth Circuit's consideration of the executive order it was considering.

> But the orders do not permit soul-sustaining group services of faith organizations, even if the groups adhere to all the public health guidelines required of the other services.
>
> Keep in mind that the Church and its congregants just want to be treated equally. They don't seek to insulate themselves from the Commonwealth's general public health guidelines. They simply wish to incorporate them into their worship services. They are willing to practice social distancing. They are willing to follow any hygiene requirements. They do not ask to share a chalice. The Governor has offered no good reason for refusing to trust the congregants who promise to use care in worship in just the same way it trusts accountants, lawyers, and laundromat workers to do the same.
>
> Come to think of it, aren't the two groups of people often the *same people—* going to work on one day and going to worship on another? How can the same person be trusted to comply with social-distancing and other health guidelines in secular settings but not be trusted to do the same in religious settings? The distinction defies explanation, or at least the Governor has not provided one.

*Roberts v. Neace*, No. 20-5465, 2020 U.S. App. LEXIS 14933, at *8-9 (6th Cir. May 9, 2020) (emphasis in original). *Order No. 13*'s logic for treating churches less favorably than many secular groups also defies explanation.

20. It is absolutely clear that the Commonwealth of Massachusetts has arbitrarily judged the religious reasons of Plaintiffs assemblies to be of "lesser import" than the dozens upon dozens of nonreligious reasons the government has freely chosen to exempt from the mass gathering ban.

21. This behavior has been explicitly condemned by the Supreme Court in *Lukumi* and by the Sixth Circuit in *Roberts, supra*.

## Standard of Review

22. Unsurprisingly, there is no direct authority on the issue of a state government outright prohibiting the assembly of citizens for religious services without any hearing. Indeed, the drafters of the First Amendment and the Massachusetts Constitution likely would have never considered such a circumstance possible.

23. The Court in *Lukumi* set forth this standard: "A law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." *Id.* at 546.

24. As set forth above, the incredibly broad swath of arbitrary exemptions allowed by Defendant in this case while explicitly naming religious organizations as limited to fewer than ten clearly show that the Executive Order is not neutral or of general application – there was undeniable governmental discretion used in determining what should be considered "essential."

25. As such, Plaintiffs assert that this action is subject to strict scrutiny.

## The Executive Order fails strict scrutiny

26. In order to satisfy strict scrutiny, a law restrictive of religious practice must not just advance a compelling governmental interest, but "must be narrowly tailored in pursuit of those interests." *Id.* at 531.

27. Plaintiffs do not dispute that keeping the public safe during a pandemic such as COVID-19 is a compelling government interest. Indeed, it is one of the highest order. Plaintiffs do, however dispute that *Order No. 13* in fact advances that interest or that *Order No. 13* is sufficiently narrowly tailored to satisfy strict scrutiny.

28. When "[t]he proffered objectives are not pursued with respect to analogous non-religious conduct, and those interests could be achieved by narrower ordinances that burdened religion to a far lesser degree," the law is not narrowly tailored or the least restrictive means. *Id.* at 546.

29. Again, the *Order No. 13* offers absolutely no evidence as to why churches could not be held subject to the same requirements to which all other "essential" exempted gatherings must adhere.

30. Any evidence offered by Defendants must offer more to this Court than "plausible hypotheses" (*Contractors Ass'n of E. Pa. v. City of Phila.* 6 F.3d 990, 1008 (3d Cir. 1993) or "ambiguous proof" (*Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 800 (2011)).

31. Frankly, this pandemic, with its rapid and recent onset and the effects of it on our communities, is so unprecedented that it would be nigh impossible for Defendants to offer any substantive evidence on this matter that surpasses mere hypotheses or ambiguous proof.

32. The argument that Defendants' stance is no more than "ambiguous proof" is bolstered by the fact that there are at least fifteen other states which deliberately included places of worship in the "exempt" category in their respective Executive Orders and did not ban religious assembly whatsoever.[2]

---

[2] "Roughly a third of states (15) are allowing religious gatherings to continue without any limit on their size." Virginia Valla, *Most states have religious exemptions to COVID-19 social distancing rules*, Pew Research Center, April 27, 2020, https://pewrsr.ch/3bHDndx.

33. The Supreme Court is clear – a court must look "**beyond broadly formulated interests justifying the general applicability of government mandates and [scrutinize] the asserted harm of granting specific exemptions to particular religious claimants**." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006), emphasis added.

34. The Supreme Court in *Gonzalez* went on to note that the State needed "to show with more particularity how its admittedly strong interest…would be adversely affected by granting an exemption to the [Plaintiff]." *Id.* citing *Wisconsin v. Yoder*, 406 U.S. 205 (1972).

35. The Supreme Court's *Gonzalez* decision requires Defendants to prove how allowing Plaintiffs to continue exercising their religious rights would "adversely affect" the government's compelling interest any more than every single exemption Defendants have already allowed (including allowing in excess of ten people inside simultaneously at a single store, airplane, train car, or legal office).

36. Indeed, as set forth in the Complaint and in Pastor Casey's Declaration, Plaintiffs' church services are being conducted with adequate social distancing and adherence to all CDC recommendations. They pose no unique risk not posed by any of the mass gatherings allowed in *Order No. 13*.

37. It is for all these reasons that Plaintiffs strongly assert that they have a reasonable likelihood of success on the merits.

**There is a substantial risk of irreparable harm to the Plaintiff.**

38. The United States Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976).

39. This Court just last week noted that "a finding of a First Amendment violation obviates the need for an additional showing of irreparable harm. *See Sindicato Puertorriqueño de Trabajadores*, 699 F.3d at 10-11." *ACA Int'l v. Healey*, No. 20-10767-RGS, 2020 U.S. Dist. LEXIS 79716, at *25 (D. Mass. May 6, 2020).

40. Plaintiffs' constitutional rights to worship and assemble and to be free from a state-established religion have already been violated by the Defendant and will continue to be violated absent this Court's action. Defendants have indicated that Plaintiff Casey's third offense will likely result in criminal charges being filed against him.

**There is no similar risk of irreparable harm to Defendants.**

41. As previously stated, the Defendants have already exempted dozens of other gatherings from the restrictive "10-persons or less" rule. Exempting a constitutionally protected class such as churches, which are attended by the very individuals gathering in furtherance of those activities and services *Order No. 13* has deemed essential, as well during this litigation does not injure or harm Defendants.

42. The Commonwealth remains free to enact permissible and reasonable regulations on church services such as narrowly-tailored rules regarding social distancing and safety guidelines, with which Plaintiffs are already in compliance.

**Granting Plaintiffs' request would promote the public interest.**

43. The law is quite clear on the favoring of constitutional freedoms: "it is always in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), *aff'd' sub nom. Burwell v. Hobby Lobby stores, Inc.*, 573 U.S. 682 (2014) (quotations omitted).

## Conclusion

Plaintiffs Adams Square Baptist Church and Pastor Kristopher Casey respectfully request that this Court grant its request for a Temporary Restraining Order, allowing it to continue its in-person, indoor church services with more than 10 people while practicing adequate social distancing and following all relevant safety guidelines.

WHEREFORE, Plaintiffs Adams Square Baptist Church and Pastor Kristopher Casey respectfully ask the Court to grant the Motion and issue its requested relief.

Dated:  May 13, 2020.

Respectfully submitted,

ADAMS SQUARE BAPTIST CHURCH
and PASTOR KRISTOPHER CASEY

By their attorneys,

s/ *Carl F. Schmitt*
Carl F. Schmitt (BBO # 564988)
SCHMITT & DILLON
233 Main Street
Lancaster, MA 01523
Telephone: 978-368-7500
Email: cschmitt@sdslawyers.com

and

David C. Gibbs, Jr.*
Seth J. Kraus*

|  |  |
|---|---|
| *Motion for admission pro hac pending* | Jonathan D. Gibbs*<br>GIBBS & ASSOCIATES LAW FIRM, LLC<br>6398 Thornberry Ct.<br>Mason, Ohio 45040<br>Telephone: (513) 234-5545<br>Email: dgibbs@gibbs-lawfirm.com<br>          skraus@gibbs-lawfirm.com<br>          jgibbs@gibbs-lawfirm.com<br><br>*Counsel for Plaintiff* |